**CORWIN CONSULTANTS, INC.,**
Petitioner,

v.

The **INTERPUBLIC GROUP OF COMPANIES, INC.,** et al.,
**Respondents.**

No. 73 Civ. 1978.

United States District Court,
S. D. New York.

April 12, 1974.

Benedict Ginsberg, New York City, for petitioner.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for respondent, The Interpublic Group of Companies, Inc.

Paul J. Curran, U. S. Atty., Mel P. Barkan, Asst. U. S. Atty., New York City, for respondent, United States.

Maass, Levy, Friedman, Hirsch & Stern, New York City, for respondent Samuel A. Culbertson, II.

Chapman & Burke, New York City, for respondent Cowles Communications, Inc.

Goodhue & Lange, Mount Kisco, N. Y., for respondents Peter M. Moffitt and W. Denning Harvey.

## MEMORANDUM

LASKER, District Judge.

This is an action in the nature of an interpleader to determine priority among four lienors to a fund of money accumulating under a contract between the debtor, Marion Harper, Jr., and the Interpublic Group of Companies, Inc. ("Interpublic").[1] Interpublic does not make any claim to the fund except for attorney's fees. Originally brought in state court, the suit was removed to this court by motion of the Internal Revenue Service ("IRS") pursuant to 28 U.S.C. §§ 1441, 1442 and 1444. Three lienors, Corwin Consultants, Inc. ("Corwin"), Cowles Communications, Inc. ("Cowles") and the IRS, move for summary judgment, each claiming that, on the undisputed facts, it is entitled to priority in its claim to the fund. The fourth lienor, Samuel A. Culbertson, II, does not claim priority. Respondents Peter M. Moffitt and W. Denning Harvey have been paid in full and have defaulted in this proceeding.

### I.

The following facts are undisputed. On February 1, 1968, Harper and Interpublic entered into a covenant not to compete under which Harper, Interpublic's founder, would receive certain monthly payments until 1976.

On April 15, 1970, while Harper was a resident of Irvington, New York, in Westchester County, the IRS filed with the Westchester County Clerk a notice of tax lien for $394,692.55, which it claimed was the amount of Harper's unpaid 1968 taxes.

On January 12, 1971, the IRS filed a second notice of tax lien with the Registrar of the City of New York for the same unpaid 1968 taxes (which, including statutory additions,[2] then amounted to $396,923.65). Simultaneously, Interpublic was given notice of this lien by a Notice of Levy from the IRS dated January 12, 1971.

On February 28, 1972, Cowles, a creditor of Harper, obtained from Supreme Court, New York County, an order of attachment pursuant to N.Y. C.P.L.R. § 6201(2). The sheriff levied upon McCann, Erickson, Inc. ("McCann") a wholly-owned subsidiary of Interpublic, and upon Harper's counsel, Debevoise, Plimpton, Lyons and Gates, who as Harper's agent, had been receiving his payments under the agreement with Interpublic. However, no levy was made upon Interpublic itself and no property was turned over to the sheriff by McCann or Debevoise. On June 12, 1972, Cowles reduced its claim to judgment for $56,820.54 plus interest, but never delivered execution of the judgment to the sheriff. After February 15, 1972, Interpublic accumulated the monthly payments due Harper pending a determination of the right of Harper's creditors to the money. Some time in the first half of 1972, Harper disappeared, and none of the parties have been able to locate him since then.

On October 3, 1972, at 10:32 A.M., the IRS delivered to the sheriff of New York County a third notice of tax lien in the amount of $168,895.90 representing Harper's unpaid taxes for 1963, 1964 and 1965 (plus statutory additions) and on the same day served Interpublic with a Notice of Levy. Two hours later, at 12:51 P.M., Corwin delivered an execution to the sheriff, in the amount of $52,346.00. On May 23, 1972, Corwin obtained a judgment against Harper in Supreme Court, New York County. In accordance with the terms of the judgment, Corwin then instituted a proceed-

---

1. If Harper survives and performs his contract with Interpublic until January 1, 1976, $483,400. will have accumulated in his name since Interpublic last paid him an installment on March 15, 1972. As of the date of this memorandum, $216,665. had accumulated.

2. Statutory additions can enlarge the scope of tax liens. In re Parchem, 166 F.Supp. 724, 726 (D.C.Minn.1958) ; 26 U.S.C. § 6321.

ing in state court pursuant to CPLR § 5239 for a determination of priority of lien on Harper's property. The court ordered Interpublic, the stakeholder here, to set aside a fund of $60,000. for the satisfaction of Corwin's judgment pending the outcome of the § 5239 proceeding, and the IRS removed the proceeding to this court.

On February 5, 1973, Culbertson delivered his execution to the sheriff, in the amount of $608,180.90.

## II.

On the facts described, Corwin contends (1) that the 1970 IRS lien which was filed prior to the accumulation of any funds under Harper's contract with Interpublic fails because as a matter of law a lien cannot attach to contingent rights in property, such as Harper's rights to payment under his contract with Interpublic; (2) that the 1971 and 1972 IRS liens fail because they were not filed in the debtor's known county of residence and (3) that the present action determines lien priority only as to the $60,000. fund established by the state court for satisfaction of Corwin's judgment against Harper.

The IRS answers (1) that its 1970 lien is good against the sums subsequently accumulated under the contract because it is after-acquired property to which federal tax liens do attach; (2) that its 1971 and 1972 liens were properly filed and effective to establish its lien priority, and (3) that the present action should determine the disposition not only of the $60,000. fund established by the state court, but also the funds accumulated and yet to accumulate under the contract *subsequent* to the date of the state court judgment and subsequent to the final determination of this lawsuit.

The IRS and Corwin argue that Cowles has no lien priority because its February 28, 1972 levy lapsed under CPLR § 6214(e). Interpublic makes no claim to the fund, but seeks attorney's fees. Culbertson, evidently, simply sits and hopes.

## III.

■ 26 U.S.C. §§ 6321 and 6323 prescribe the procedure for the perfection of a federal tax lien. § 6321 provides:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

A § 6321 lien has priority against judgment creditors if notice has been filed in accordance with § 6323, which provides in relevant part:

"(a) The lien imposed by section 6321 shall not be valid as against any . . . judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

\* \* \* \* \* \*

(f)(1) The notice referred to in subsection (a) shall be filed—

(A)(ii) In the case of personal property, whether tangible or intangible, in one office within the State (or the county, or other governmental subdivision), as designated by the laws of such State, in which the property subject to the lien is situated

\* \* \* \* \* \*

(2) For the purpose of paragraph (1), property shall be deemed to be situated—

\* \* \* \* \* \*

(B) In the case of personal property, whether tangible or intangible, at the residence of the taxpayer at the time the notice of lien is filed."

It is undisputed that the IRS notice of lien filed in Westchester in 1970 meets the requirements of the quoted provisions, since Harper was at the time a resident of that county. Consequently, we find the IRS 1970 lien (covering 1968 taxes) has first priority. The par-

ties lock horns, however, on the validity of the 1971 and 1972 IRS liens (the 1971 lien for the same 1968 taxes and the 1972 lien for 1963, 1964 and 1965 taxes). The IRS argues that its filing of the 1971 and 1972 liens at the situs of the *debt* meets the requirements of § 6323, while Corwin counters that because Harper's actual residence cannot be verified, the filing does not meet the requirements of § 6323(f)(1)(A)(2) and (f)(2)(B). Corwin argues, in essence, that the IRS can *never* perfect a tax lien unless it files in the taxpayer's demonstrable county of residence.

■ There appears to be no authority on the question whether the "substantial compliance" or "due diligence" standard contended for by the IRS satisfies the notice requirements of §§ 6321–6323. We believe that it does, and for the reasons indicated below, find that where (as here) a taxpayer's actual residence cannot be determined, filing in the county of the situs of the debt is sufficient to establish priority of a federal tax lien.

Our starting point is Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). There the Court considered what form of notice to beneficiaries of a common trust fund was sufficient to bind non-residents whose addresses were unknown to the trustee, who sought to settle the accounts of the trust. *Mullane*, like the present case, involved substantial property rights of the persons sought to be notified. The court recognized, however, that there was also a substantial interest of the state in having the means to close trusts with a measure of finality (339 U.S. at 313, 70 S.Ct. 652), and noted that "[a] construction of the Due Process Clause which would place impossible or impractical obstacles in the way [of the state interest] could not be justified" (339 U.S. at 313–314, 70 S.Ct. at 657). The court's holding (at 314, 70 S.Ct. at 657) that the notice required is "notice reasonably calculated, under all the circumstances, to *apprise interested parties* of the pendency of the action . . . ." (emphasis added) guides us here, for the due process clause does not require the impossible:

> "The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, [citations omitted] or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (339 U.S. at 315, 70 S.Ct. at 657.)

Measured by the standard articulated in *Mullane*, we find that the 1971 and 1972 IRS filings are constitutionally adequate. The substantiality of the federal government's interests in collecting taxes and in having recourse to a nonpaying taxpayer's property are patent. To deprive the government of the right to proceed against the taxpayer's property in any case where his residence is unknown (or he makes himself scarce) would allow tax evasion by the mere disappearance of the taxpayer. The due process clause does not require such a result, particularly where (as here) it is reasonable to assume the taxpayer knows he is delinquent in his payments and that *some* consequences are bound to follow from his delinquency.

■ Moreover, to invalidate the 1971 and 1972 liens (which, as noted above, were filed at the situs of the debt), while giving priority to the competing Corwin lien, would do violence to the clear policy of § 6323 that tax liens are favored over judgment liens. This policy is clear not only from the language of § 6323 itself, but from the facts that the priority of tax liens arises without requiring the IRS to seek a judgment, that the liens continue even where there is no certain property to which it can attach,[3] and, in the case of personal property, need be filed in only one place (the tax-

---

3. *See infra* section V.

payer's residence), rather than every place where such property is located.

■ In view of the evident policy of § 6323 favoring federal tax liens, it strains common sense to hold that the requirement of filing at the place of the taxpayer's residence was intended to make the government's perfection of a lien impossible in any case involving a taxpayer without a verifiable residence. A more reasonable construction of the statute is that personal property is "deemed" to be at the taxpayer's residence in order to *facilitate* perfection of a lien on personal property which might be scattered across the country in various banks or brokerage accounts. This construction finds support in the language of § 6321 that a properly filed tax lien shall attach to *"all* property and rights to property, whether real or personal, belonging to such person." (emphasis added.) Requiring separate filings at the situs of *each* interest in personal property would, of course, heavily burden the IRS in its efforts to effect such all-embracing liens. Hence the residency provision.

■ Moreover, although § 6323 does not *contemplate a taxpayer without a* residence, it explicitly provides that the filing be made in accordance with requirements of the applicable state law, § 6323(f)(1)(A). New York law is applicable here, since New York is Harper's last known residence, as well as the situs of the debt and no party contends the law of any other state is applicable. New York Lien Law, § 240(2) provides in part:

"Notices of liens upon personal property for taxes payable to the United States . . . shall be filed in the county within the city of New York or in the town or city where the owner, if a resident of the state, resides at the time the lien arises, *and if not a resident, in the county within the city of New York or in the town or city where the property is at such time."* (emphasis added.)

Clearly, New York law, which provides for the contingency involved here, favors our holding here.

Moreover, to find the 1971 and 1972 IRS liens invalid on the ground that filing was not made in Harper's county of residence would in effect impose upon the government a stricter standard of notice than a New York judgment creditor seeking to establish priority. N.Y. C.P.L.R. § 5227, providing for a special proceeding by a judgment creditor against one indebted to a judgment debtor states: "Notice of the proceeding shall . . . be served upon the judgment debtor in the same manner as a summons or by registered or certified mail . . ." It was pursuant to § 5227 that Corwin obtained an order requiring Interpublic to set aside a $60,000. fund for satisfaction of its judgment. Although § 5227 (like 26 U. S.C. § 6323) does not provide for waiver of notice in cases where the debtor's residence is unknown, Corwin itself was permitted to waive notice to Harper in the state court action, see Corwin Consultants, Inc. v. The Interpublic Group of Companies, Index No. 15276/70 (Sup.Ct. N.Y.Co. 1972) (N.Y.L.J. May 23, 1972). See also Dobkin v. Chapman, 21 N.Y.2d 490, 503, 289 N.Y. S.2d 161, 172, 236 N.E.2d 451, 458 (1968) ("Undeniably, there are situations in which insistence on actual notice, or even on the high probability of actual notice, would be both unfair to plaintiffs and harmful to the public interest.")

In the light of the evident intention of the federal statute, and the New York State lien law, we conclude that the 1970, 1971 and 1972 IRS liens were all effective to establish first priority to the fund accumulating under Harper's contract.

## V.

■ The question remains whether the IRS liens attach to Harper's payments from Interpublic falling due (1)

subsequent to the time the liens were filed and (2) subsequent to both the state court judgment and the determination of priorities here. We find that they do. Harper's right to payment under his contract with Interpublic is, by the terms of the contract, contingent upon his performance of the contract. It is settled that although tax liens do *not* attach to contingent rights such as Harper's, pre-existing liens *do* attach as soon as the taxpayer gains a fixed right to property, i. e., in this case, as each monthly payment to Harper becomes due and owing. In Glass City Bank v. United States, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945), the IRS obtained a judgment against the taxpayer, who subsequently performed certain services as the receiver of a bankrupt corporation. The court found that the IRS lien attached to the corporation's debt to the taxpayer, and that 26 U.S. §§ 3670 and 3671 (now §§ 6321, 6322) "read together indicate that a continuing lien covers property or rights to property in the delinquent's hands at any time prior to expiration [of the lien]." United States v. Blackett, 220 F.2d 21, 23 (9th Cir. 1951) involved a judgment debtor's liquor license, sold in a judgment sale, to which the IRS made claim based on a prior tax lien. The court rejected the judgment creditor's argument that the license was not property to which a federal tax lien could attach because the sale was contingent on state approval of the purchaser, and held that the IRS lien attached to the proceeds of the sale at the moment the debtor's right to payment came into existence. Home Insurance Co. v. B. B. Rider Corp., 212 F.Supp. 457 (D.C.N.J. 1963) reached a similar result with respect to a fire insurance policy, in holding that a right to payment, to which a lien could attach, came into being when a fire occurred. These cases guide us here. The IRS lien attached to each monthly payment as it became due under Harper's contract with Interpublic. Moreover, the IRS liens can continue to attach to payments falling due after judgment, until they are satisfied or payments cease under the contract. Beeghly v. Wilson, 152 F.Supp. 726, 737 (N. D.Iowa 1957). Consequently, we find that the 1972 IRS lien may absorb any funds accumulating after the 1970 and 1971 liens (covering the same 1968 taxes) are satisfied.

## VI.

Having determined that the IRS has first priority to the accumulating fund until its liens are satisfied, we turn to Interpublic's request for attorney's fees of $8,187.30 for work done in connection with this action. Although fees for the stakeholder's counsel do not have priority over a federal tax lien, United States v. R. F. Ball Construction Co. Inc., 355 U.S. 587, 78 S.Ct. 442, 2 L. Ed.2d 510 (1958), United States v. Liverpool & London & Globe Ins. Co., Ltd., 348 U.S. 215, 75 S.Ct. 247, 99 L.Ed. 268 (1955), they have priority over the claims of judgment creditors provided they satisfy the two standards governing an award of attorney's fees to the stakeholder under Rule 22(1), Federal Rules of Civil Procedure. Pennsylvania Ins. Co. v. Long Island Marine Supply Corp., 229 F.Supp. 186, 188 (S.D.N.Y. 1964); United States v. Henry's Bay View Inn, Inc., 191 F.Supp. 632, 634 (S. D.N.Y.1960). First, the stakeholder must concede his liability, as Interpublic does; and second, the award sought must bear a reasonable relation to the amount of the admitted liability. We find Interpublic's attorney's fees, which are less than 5% of the liability ($175,000. as of November 15, 1973) are reasonable. See Aetna Insurance Co. v. Dickler, 100 F.Supp. 875 (S.D.N.Y. 1951); A/S Krediit Pank v. Case Manhattan Bank, 303 F.2d 648 (2d Cir. 1962); Savannah Bank & Trust Co. v. Block, 175 F.Supp. 798, 801–802 (S.D. Ga.1959), 3A Moore's Federal Practice, ¶ 22.16[2] (1970 ed.) pp. 3144–3156.

Accordingly, Interpublic takes its attorney's fees after the IRS liens are satisfied.

## VII.

We turn next to the fray among Corwin, Cowles and Culbertson. We find that Corwin takes after the IRS and Interpublic. Under New York law, a judgment creditor does not obtain a lien merely by obtaining a judgment, or even by serving restraining notices subsequent to the judgment. City of New York v. Panzirer, 23 A.D.2d 158, 259 N.Y.S.2d 284 (1965); County National Bank v. Inter-County Farm Coop. Association, 65 Misc.2d 446, 317 N.Y.S.2d 790 (1970). A judgment lien is created when execution is delivered to the sheriff. United States v. Pearson, 258 F. Supp. 686 (S.D.N.Y.1966), C.P.L.R. §§ 5202(a), 5234(b). Corwin delivered an execution to the sheriff on October 3, 1972, approximately two hours after the IRS filed its 1972 lien; Culbertson delivered an execution on February 5, 1973; and Cowles has never delivered an execution. Accordingly, Corwin, Culbertson and Cowles, respectively, take after Interpublic.

Cowles nevertheless takes the position that it should take after Interpublic on the basis of an order of attachment and levy served by the sheriff upon McCann-Erickson (Interpublic's wholly owned subsidiary) and Harper's counsel, the law firm of Debevoise, Plimpton, Lyons and Gates, on February 28, 1972—or some eight months before Corwin's execution. We disagree for three reasons. First, although Cowles' order was effective to establish priority as to any funds held by either McCann or Debevoise for Harper's account, it is undisputed that they held no such funds so there was nothing to which the lien could attach. Second, we find that as a matter of law, Cowles' service on McCann and Debevoise was inadequate to establish a lien on funds held by In-

terpublic. Although one corporation can of course be the agent of another, Sugarman, Principles of Agency, § 27 (2d ed. 1948) agency is not presumed from the mere fact that one corporation is wholly owned by another. Gillis v. Jenkins Petroleum Process Co., 84 F.2d 74, 79 (9th Cir. 1936); Berkey v. Third Ave. Ry. Co., 244 N.Y. 84, 95, 155 N.E. 58, 61 (1926). Apart from the flat statement that McCann is wholly owned by Interpublic (which owns some 120 subsidiaries), Cowles adduces no facts in support of its contention that McCann acted or should be deemed to have acted as Interpublic's agent for purposes of establishing a lien on the Harper fund.

Third, and in our view dispositive, is the fact that even assuming Cowles' lien priority as of February 28, 1972 as to the Harper fund, its priority expired 90 days thereafter. C.P.L.R. § 5234(b) provides that "Where two or more executions or orders of attachment are . . . delivered to the same enforcement officer, they shall be satisfied . . . in the order in which they were delivered." However, C.P.L.R. § 6214(e) conditions the effectiveness of a lien so established on the action of the creditor: "At the expiration of ninety days after a levy is made by service of the order of attachment . . . the levy shall be void except as to property or debts which the sheriff has taken into his actual custody . . . or as to which a proceeding under subdivision (d) [proceeding to compel payment of or delivery] has been commenced." It is undisputed both that the sheriff did not take into custody any property in the hands of Debevoise or McCann, and that Cowles did not commence a § 6214(d) proceeding to compel payment or delivery within 90 days. In fact, it "commenced" this action by filing a counterclaim over a year after it obtained the levy and order of attachment. Consequently, its levy is void, and it loses any lien priority it might have had on the

basis of the February 28, 1972 levy and order.

Cowles contends, nonetheless, that because none of the respondents have pleaded laches, the clear language of § 6214(e) should be ignored; that this proceeding be deemed a § 6214(d) proceeding in satisfaction of the statutory requirement and that service on McCann and Debevoise be deemed adequate to establish a lien on the Interpublic fund. We are empowered to do this, Cowles claims, pursuant to our broad authority under C.P.L.R. § 5240 to "make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." We decline to do so. It is clear after Cook v. H.R.H. Construction Corp., 32 A.D.2d 806, 807, 302 N.Y.S.2d 364, 366 (1969) that § 5240 "is not an alternative procedure for achieving [lien] priority." Respondents' failure to plead laches is of no consequence, since we are, of course, not permitted to abrogate the statute's clear requirement that a § 6214 proceeding must be commenced within 90 days.

## VIII.

If Harper continues to perform his contract with Interpublic until its termination on January 1, 1976, $483,400. will have accumulated since Interpublic last paid him an installment. The IRS liens cover $441,637.73 of that sum as of November, 1973. Statutory additions in the interim will increase Harper's tax liability to a sum uncertain at this time. Consequently, it is unlikely that any creditors beyond the IRS and Interpublic will share in the accumulated fund. In any event, however, we declare the priorities of petitioner and the respondents as follows: The IRS to the extent of its assessments, including statutory additions, Interpublic, Corwin, Culbertson and Cowles, respectively.

The IRS' motion for summary judgment is granted. Corwin's and Cowles' motions for summary judgment are denied.