Gail MANTOVANI, Petitioner,

v.

FAST FUEL CORP., Respondent.

SOLAR PETROLEUM CORP. (formerly Fast Fuel Corp.), Respondent and Interpleading Petitioner,

v.

The COMMISSIONER OF INTERNAL REVENUE and Andrew P. Mantovani and Gail A. Mantovani and Fred M. Schildwachter & Sons, Inc., and Lucy Varian, Respondents.

79 Civ. 1566 (KTD).

United States District Court, S. D. New York.

May 22, 1980.

Andrew P. Mantovani, New York City, for petitioner; John Yandrasitz, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for respondents; Katherine J. Trager, Sp. Asst. U. S. Atty., New York City, of counsel.

OPINION

KEVIN THOMAS DUFFY, District Judge:

Cross motions for summary judgment have been made in this case which involve neat questions of arcane tax law. The history of the matter is quite convoluted, but a brief review of the facts is necessary. Solar Petroleum Corp. is the successor to Fast Fuel Corp. which ceased operations owing moneys to various individuals. These included Gail Mantovani, the petitioner, the Commissioner of the Internal Revenue Service and the various other respondents. Some have abandoned their claims and the matter now stands as a simple interpleader action in which Solar holds a sum of money to which both the Mantovanis and the Commissioner of Internal Revenue lay claim.[1] The issue is simply which claim is entitled to a priority.

The government and the Mantovanis agree that the statement of facts in the government's memorandum gives a complete and accurate picture of the situation. These facts are as follows:

This proceeding was originally commenced in State Court by the petitioner, Gail Mantovani, to enforce a judgment in her favor against the Solar Petroleum Corporation ["Solar"] as the garnishee of the Solar Fuel Oil Corp. ["the taxpayer"]. Petitioner asserts that she obtained a judgment against the taxpayer in February, 1977, and, in August, 1978, issued an execution thereof on Solar as garnishee.

Solar admits its debt to the taxpayer and interpleaded all those alleging claims to this debt including the Commissioner of the Internal Revenue Service. The Commissioner promptly removed the action to this Court and the interpleader fund is now in the custody of this Court.

The Mantovanis assert three claims to the interpleader fund. The first is based upon a judgment Gail Mantovani obtained

---

1. Lucy Varian withdrew her claim to the interpleader fund on December 26, 1979. Fred M. Schildwachter & Sons, Inc. failed to respond to this motion and its claim is deemed abandoned.

against the taxpayer in the amount of $9,124.68. The transcript of this judgment was filed with the Clerk of Bronx County on March 7, 1977, and delivery of the execution to the sheriff occurred on August 15, 1978. The second claim is based upon a security agreement Gail Mantovani entered into with the taxpayer on August 21, 1973, in which she acquired a security interest in a 1972 Dodge truck in the amount of $12,500. The UCC financing statement for the agreement was filed on November 22, 1974. In support of the third claim, Andrew and Gail Mantovani rely upon the taxpayer's purported assignment of all its rights to the amounts owed by Solar to the taxpayer. This assignment, dated April 28, 1977, was recorded in Bronx County on June 12, 1978.

The United States' claim is based upon assessed tax liabilities, secured by federal tax liens. On the dates set forth below, a delegate of the Secretary of the Treasury made assessments against the taxpayer and sent notices and demands for payment as follows:

| Taxable Period | Type of Tax Form No. of Return | Assessment & Notice & Demand Date | Assessment (Tax, Penalties & Interest) | Date Notice of Lien Filed |
|---|---|---|---|---|
| June 1976 | Highway tax Form 2290 | 1/31/77 | $ 127.93 | 11/16/77 |
| March 1977 | Withholding FICA Form 941 | 9/12/77 | $2,164.84 | 11/16/77 |
| Dec. 1976 | Withholding FICA Form 941 | 6/ 6/77 | $ 661.52 | 11/16/77 |
| Sept. 1976 | Withholding FICA Form 941 | 3/21/77 | $2,494.35 | 5/ 3/77 |
| June 1976 | Withholding FICA Form 941 | 11/22/76 | $2,225.92 | 3/ 8/77 |
| March 1976 | Withholding FICA Form 941 | 11/22/76 | $2,732.79 | 3/ 8/77 |

The Internal Revenue Service served a Notice of Levy on Solar on June 15, 1978 and on August 17, 1978 served a final demand on Solar.

Respondent Schildwachter has filed a notice of appearance which does not state the basis of its claim. As shown by the Interpleader Petition, on February 1, 1978, the taxpayer notified Solar's president that it should make the first payment of moneys due to Schildwachter and that "payment of the principal and interest have precedent over any previous instructions you may have or will receive . . . ."

The following table summarizes the competing claims to the taxpayer's property.

| DATE OF ACTION | TYPE OF ACTION | PARTY INVOLVED | SUMS CLAIMED AS A RESULT OF ACTION |
|---|---|---|---|
| 8/21/73 | Security Interest acquired in taxpayer's truck | G. Mantovani | $12,500.00 |
| 11/22/74 | Financing Statement in truck filed | G. Mantovani | — |
| 11/22/76 | IRS assessment | U.S. | 2,225.92 |
| 11/22/76 | IRS assessment | U.S. | 2,732.79 |
| 1/31/77 | IRS assessment | U.S. | 127.93 |
| 2/ 8/77 | Judgment against taxpayer | G. Mantovani | 9,124.68 |

| DATE OF ACTION | TYPE OF ACTION | PARTY INVOLVED | SUMS CLAIMED AS A RESULT OF ACTION |
|---|---|---|---|
| 3/ 8/77 | Notices of lien filed for two 11/22/76 assessments | U.S. | — |
| 3/21/77 | IRS assessment | U.S. | 2,494.35 |
| 4/28/77 | Taxpayer's assignment of $15,000 from the interpleader fund | A. G. Mantovani | 15,000.00 |
| 5/ 3/77 | Notices of lien filed for 3/21/77 assessment | U.S. | — |
| 6/ 6/77 | IRS assessment | U.S. | 661.52 |
| 9/12/77 | IRS assessment | U.S. | 2,164.84 |
| 11/16/77 | Notices of lien filed for 6/6/77, 1/31/77 and 9/12/77 assessments | U.S. | — |
| 2/ 1/78 | Taxpayer's purported assignment of $8,827.16 from interpleader fund | Schildwachter | 8,827.16 |
| 6/12/78 | 4/28/77 assignment recorded | G. Mantovani | — |
| 8/15/78 | Delivery of execution of judgment to sheriff | G. Mantovani | — |

■ The parties have also agreed that where there are claims upon a taxpayer's property in addition to federal tax liens, the priority of the competing claim must be resolved in accordance with federal law. *Hartford Provision Co. v. United States*, 579 F.2d 7 (2d Cir. 1978).

Section 6321 of Title 26 provides that:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

■ The common law priority rule of "the first in time, the first in right," still obtains, *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954), subject only to the statutory requirements set forth in 26 U.S.C. § 6323 which provides, in pertinent part:

The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate.

.     .     .     .     .

The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

■ It is evident from the language quoted above, that where an individual has attained the status of a judgment lien creditor under local law, or has perfected a security interest with respect to the property which is the subject of a federal tax lien prior to the date on which the federal tax lien has been filed, the individual lien pre-

vails over the federal tax lien. Thus, whether a judgment creditor's lien or a holder's security interest was perfected prior to the date on which notice of the federal tax lien was filed is, initially, a question of state law. *Hartford Provision Co., supra,* at 9. Thereafter, "the 'actual legal effect' of the lien whose priority is in question" is determined under federal law. *Id.*

As previously mentioned, the Mantovanis have three separate claims. The first, possessed by Gail Mantovani, is as a judgment lien creditor. The second, again possessed by Gail Mantovani, is a security interest in a motor vehicle. The third, possessed by Gail and Andrew Mantovani, is a security interest in a general intangible.

█ It is the government's position that none of these claims are superior to its tax lien. With respect to the judgment lien, and Gail Mantovani's status as a judgment lien creditor, the government argues that under New York law a judgment lien is created only after execution is delivered to the sheriff. In this the government relies upon § 5202(a) of New York's Civil Practice Law and Rules, which provides:

> Where a judgment creditor has delivered an execution to a sheriff, the judgment creditor's rights in a debt owed to the judgment debtor or in an interest of the judgment debtor in personal property, against which debt or property the judgment may be enforced, are superior to the extent of the amount of the execution to the rights of any transferee of the debt or property . . . . .

The government concludes that since the execution was not delivered to the sheriff until August 15, 1978, after which all tax liens had been filed, it is subordinate thereto.

Petitioner urges a different conclusion. While conceding the applicability of § 5202, petitioner focuses upon an exception carved out of the general rule stated above. Indeed, § 5202 provides that "a transferee who acquired the debt or property for fair consideration before it was levied upon" shall have a perfected claim. N.Y.Civ. Prac.Law § 5202(a)1 (McKinney 1978).

Petitioner argues that since she "purchased" all of Solar's interests in the interpleader fund, the claim is perfected under § 5202(a)1 and is superior to the government's claim. I disagree.

A reading of the purported "assignment of interest" is nothing more than an agreement under which Solar's interest in the proceeds of contract were to serve as collateral for the taxpayer's debt to the Mantovanis. To be sure, the "assignment of interest" possessed all the earmarks of a collateral agreement and none of the earmarks of a genuine transfer. Under the agreement the taxpayer was permitted to pay Gail Mantovani some or all of the $15,000 debt any time after April 28, 1977 (the date of the assignment) and prior to the first installment payment of the interpleader fund on June 30, 1978. If a portion was paid, the interpleader fund was to be reduced by that amount, and, if the proceeds in the interpleader fund exceeded $15,000, the excess was payable to the taxpayer rather than the petitioner.

Furthermore, the agreement provided that "[t]his assignment is made to secure the indebtedness due [the Mantovanis] from Solar Fuel Oil Corp." See Government's Exhibit at ¶ 9. The agreement was recorded on June 12, 1978.

It is evident that such a collateral agreement, although denominated as an assignment of interest, falls far short of the type of "perfected transaction" which marks a valid assignment. *Miller v. Wells Fargo Bank,* 540 F.2d 548, 557–58 (2d Cir. 1976).

Thus, petitioner was never a transferee within the meaning of § 5202(a)1, and, having failed to deliver execution to the sheriff prior to the time the government filed its tax lien, her claim as a judgment creditor is inferior to that of the government.

Petitioner's attempts to distinguish the clear language of § 5202 are meritless. It is sufficient to note that the New York Courts have repeatedly held that liens of a judgment creditor "are perfected only by the issuance of an execution pursuant to C.P. L.R. 5202, subd. (a)." *Cibro Petroleum*

*Products v. Fowler Finishing Co.*, 92 Misc.2d 450, 452, 400 N.Y.S.2d 322, 324 (Sup. Ct.1977). *See also Corwin Consultants, Inc. v. Interpublic Group of Cos., Inc.*, 512 F.2d 605, 607 n. 2 (2d Cir. 1975).

■ Finally, petitioners argue that even assuming that by virtue of the agreement they acquired only a security interest in the interpleader fund, this interest was perfected without a filing on April 28, 1977, and has priority on the four tax liens filed thereafter. However, since this security agreement was an interest in "general intangibles," as that term is defined in the Uniform Commercial Code, perfection thereof required filing. *See* N.Y.U.C.C. §§ 9–106 and 9–302 (McKinney 1980).

■ Turning next to petitioner's August 21, 1973 security agreement in the taxpayer's truck, this does not entitle her to claim any of the proceeds of the interpleader fund. The interest runs, at best, to the truck and any proceeds from the sale thereof. However, since no part of the interpleader fund is made up of these proceeds, the petitioner's security interest is simply irrelevant. Indeed, the interpleader fund consists of assets from the sale of customer lists, accounts, accounts receivable and general intangibles and expressly excludes proceeds from any physical assets.

Thus, petitioner's security agreement in the taxpayer's truck has no effect upon the government's tax liens.

■ Petitioner's third claim consists of the taxpayer's purported assignment of its rights to the amounts owed by Solar to the taxpayer. As previously mentioned, however, this assignment was nothing more than a collateral agreement whereby petitioner received a security interest in an antecedent debt owed to her by the taxpayer. As such, the agreement fell short of a genuine assignment of the taxpayer's interest so as to make the petitioner a transferee or the taxpayer a transferor. Thus, since the taxpayer retained most, if not all, of the indicia of ownership with respect to the proceeds of the interpleader fund, it was part of the taxpayer's property against which the government could impose a tax lien.

■ Furthermore, the taxpayer's right to payment under the terms of its agreement with Solar were not contingent upon future performance by the taxpayer as urged by petitioner. *See In re Halprin*, 280 F.2d 407 (3d Cir. 1960). Rather, it amounted to an unequivocal promise to pay, contingent only upon the future conduct or performance of Solar. As such, the contractual right to the proceeds was property subject to the instant tax liens. *Corwin Consultants, Inc. v. Interpublic Group of Cos., Inc.*, 375 F.Supp. 186, 192 (S.D.N.Y.1974), *rev'd on other grounds*, 512 F.2d 605 (2d Cir. 1975), *citing Glass City Bank v. United States*, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945).

■ Finally, petitioner attempts to achieve the status of judgment lien creditor via the service upon the taxpayer of the information subpoena and the restraining notice. However, the dictates of § 5202, as well as the exceptions enumerated therein, are quite explicit. Neither the general rule of § 5202 nor its exceptions will provide any support for petitioner. *See Corwin Consultants, Inc. v. Interpublic Group of Cos., Inc.*, 512 F.2d 605, 607 n. 2 (2d Cir. 1975). Thus, this argument must also be dismissed.

In sum, it is evident that each of petitioner's attempts to establish a claim to the interpleader fund superior to that of the government's claim is legally defective. Accordingly, there being no genuine issue of fact, the government's motion for summary judgment is granted and petitioner's cross-motion is denied.

Settle judgment on five (5) days' notice.