Stephen Carlton, U.S. Dept. of Justice, Tax Div., Washington, D.C., for defendant.

**SECURITY FINANCE GROUP, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendant.**

Civ. A. No. 87–0332.

United States District Court, District of Columbia.

Feb. 27, 1989.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This is a dispute as to the priority of competing interests in a debtor's assets. This court must decide whether the Internal Revenue Service ("IRS") or a private creditor, Security Finance Group, Inc., is entitled to the proceeds due debtor CMA, Inc. ("CMA") from a suit over a contract between CMA and Centex Construction Co., Inc. ("Centex"). This contract was the subject of litigation which has since been settled. The proceeds of the suit, approximately forty thousand dollars, are presently in escrow.

Plaintiff Security Finance filed notice of its security interest in the CMA/Centex contract on July 26, 1984, at the office of the Maryland State Department of Assessments and Taxation in Baltimore, Mary-

land. The IRS filed its notice of tax lien against CMA on November 19, 1985 in the office of the clerk of the Circuit Court for Montgomery County, Md.

There are two issues before the court. First, whether plaintiff received a common law assignment of the proceeds of the CMA/Centex contract or merely a security interest in the proceeds of the contract. Second, if plaintiff has a security interest in the proceeds, whether that interest is superior to the IRS tax lien. In order for the plaintiff's interest to take priority over the defendant's interest, plaintiff's interest must have been perfected under Maryland law before the IRS notice of tax lien was filed.

Maryland Commercial Code § 9–401(1) requires that a creditor file its finance statement in two places: the Maryland State Department of Assessments and Taxation and the office of the clerk of the Circuit Court of Montgomery County, where debtor CMA is located. Since plaintiff filed in only one of the two places required under that section, plaintiff can only prevail under the good faith exception of the Code, § 9–401(2). Under that section, plaintiff must show that the IRS knew or had reason to know of the contents of plaintiff's financing statement.

### I. The Determination of Plaintiff's Interest in the CMA/Centex Contract.

Before reaching the question of the defendant's knowledge, this court must decide whether plaintiff received a common law assignment from CMA, which was exempt from the recordation and knowledge requirements of the Uniform Commercial Code ("U.C.C."), or whether plaintiff received a security interest subject to the U.C.C. requirements.

Plaintiff believes this court should follow In re Halperin, 280 F.2d 407 (3rd Cir. 1960), which held that an irrevocable assignment of proceeds under an executory contract was a common law assignment. That court determined that the assignment was not subject to a tax lien on the assign-

or since it was no longer the assignor's property.

This court does not find Halperin applicable in this case. Instead, this court believes that the instant case is similar to Mantovani v. Fast Fuel Corp., 494 F.Supp. 72 (S.D.N.Y.1980). In that case the taxpayer executed an "assignment" of amounts due the taxpayer from a third party. The court held that the assignment was not a common law assignment but a security interest. The "assignment of interest" possessed all the earmarks of a collateral agreement and none of the earmarks of a genuine transfer. Id. at 76. The court pointed to language in the agreement that "[t]his assignment is made to secure the indebtedness due [the Mantovanis] ..." Id.

◼ Here, as in Mantovani, the purported assignment was merely collateral for a debt owed by debtor CMA to creditor Security Finance. Security Finance is in the business of making loans and securing collateral from its customers, which is precisely the situation that Article 9 of the U.C.C. was intended to cover.[1] Indeed, the language in the "Assignment of Interest" executed by plaintiff and CMA states that the CMA/Centex contract is "assigned ... as collateral security for a loan made by [Security Finance] to [CMA]." Thus the purported assignment in the immediate case is nothing but a misnomer for the financing arrangement between plaintiff Security Finance and the debtor.

### II. The Perfection of Plaintiff's Security Interest.

Since the disputed transaction was a security interest and not an assignment, the next issue is whether plaintiff is entitled to prevail over the defendant as a prior perfected creditor under the good faith filing exception of the Maryland Commercial Law Code, Art. 9–401(2).

Both parties agree that if the interest at issue is a security interest, then the plaintiff is considered a competing creditor with

---

**1.** Section 9–102(1)(a), Md.Commercial Code, states that Article 9 applies "[t]o any transaction ... which is intended to create a security interest in personal property or fixtures."

the IRS. Under section 6323(a) of the Internal Revenue Code,

> The lien imposed by [the Internal Revenue Service] shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgement lien creditor until notice thereof ... has been filed by the Secretary.

26 U.S.C. § 6323(a). Once notice of a tax lien has been properly filed, any subsequent "security interest" is subordinated to the IRS. Any "security interest" in existence before a tax lien is filed takes precedence over the tax lien. The Internal Revenue Code defines a "security interest" as

> any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and *the interest has become protected under local law against a subsequent judgment lien* arising out of an unsecured obligation ... (emphasis added).

*Id.* at § 6323(h)(1).

■ Both parties agree that if plaintiff's interest is a security interest, plaintiff must show that its security interest has been perfected under local law before the filing of the tax lien in order to prevail. The applicable law in this case is Maryland law.[2]

Under Maryland law the plaintiff must file its finance statement in both the office of the Maryland State Department of Assessments and Taxation and in the office of the clerk of the circuit court of the county where the debtor's business is located or where the debtor resides. Md.Code, Commercial Law, § 9–401(1). Plaintiff admits it failed to file in the latter location.

The Maryland Code does contain a good faith exception to § 9–401(1). Section § 9–401(2) states that

> A filing which is made in good faith in an improper place or not in all of the places

required by this section is nevertheless ... effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such filing statement.

"Knowledge" as interpreted by the Code means actual knowledge or reason to have such actual knowledge. Md.Code, Commercial Law, § 1–201(25).

There is a range of authority as to what constitutes actual knowledge under the good faith exception of U.C.C. § 9–401(2). This circuit outlined the boundaries of that range when it interpreted § 9–401(2) of the Md.Code in *American Employers Ins. Co. v. American Sec. Bank,* 747 F.2d 1493 (D.C.Cir.1984). The court found that the minimum amount of knowledge, short of reading the financing statement, that satisfies the section's requirements ranges from that set out in *United States v. Ed Lusk Construction Co.,* 504 F.2d 328 (10th Cir. 1974) ("actual knowledge, not constructive knowledge in a broader sense"), to *Franklin National Investment Corp. v. American Swiss Parts Co.,* 42 Mich.App. 211, 201 N.W.2d 673 (1972) (The fact that one creditor tells another creditor that the collateral in question is financed held sufficient to give "knowledge of the contents of any financing statement filed"). The law does not require that a person actually see the financing statement in order to be charged with knowledge of its contents under § 9–401(2).

On January 31 and February 2, 1989, hearings were held before this court to determine whether the defendant had knowledge or reason to know of plaintiff's security interest in the CMA/Centex contract. Specifically, this court sought to determine whether any person told IRS agent Bette Walling that there was a lien on the CMA/Centex litigation or that any creditor had a security interest in the contract that was the subject of that suit.

---

**2.** With regard to the dispute over the applicability of the D.C. or Maryland commercial law, both have the same U.C.C. provisions. "The law of the jurisdiction in which the debtor is located governs the perfection ... of the security interest." U.C.C. § 9–103(3)(b). Moreover, "A debtor shall be deemed located at his place of business if he has one, ... otherwise his residence." U.C.C. § 9–103(3)(d). The debtor in this case is located in Montgomery County, Maryland.

Based on the evidence presented during the hearings, this court finds that the defendant did have the requisite knowledge of the plaintiff's security interest in the CMA/Centex litigation and contract.

This court credits the testimony of John J. McCann, the President of CMA, and Martin Berdit, formerly a bookkeeper for CMA, concerning their meeting with IRS agent Walling in August of 1985. The meeting was held at McCann's office which is located at his residence. Agent Walling discussed with the two men the financial condition of CMA and asked McCann to fill out a standard disclosure form.

At the hearing McCann testified that he told Walling that CMA was essentially defunct. When asked if CMA expected any assets, McCann told the agent about the CMA/Centex litigation and that the proceeds expected from resolution were committed to Security Finance, pursuant to a security agreement regarding the proceeds of the CMA/Centex contract. McCann further testified that he gave agent Walling the name and phone number of the attorney handling the suit, Mr. Frank Pelland.[3]

Martin Berdit testified that he was also at the meeting with McCann and Walling that August. Berdit stated that at the time of the meeting he was not employed by CMA. He testified that McCann discussed plaintiff's security interest in the litigation and CMA's assignment of the CMA/Centex contract to plaintiff as collateral for plaintiff's loan.

The testimony of McCann and Berdit is disputed by IRS agent Walling. Walling did not recall that McCann informed her of any security interest agreement between CMA and Security Finance, or of any interest Security Finance had in the CMA/Centex litigation. The disclosure form filled out by McCann per Walling's request does not list any security interest held by the plaintiff, but does list the CMA/Centex litigation. Agent Walling's notes reflect that the CMA/Centex litigation was discussed and contain the name

and phone number of attorney Pelland. Walling testified that because of the press of other business she did not contact Pelland until almost a year after the August meeting, by which time the IRS had filed its tax lien against CMA. At that time Pelland informed Walling of the agreement between Security Finance and CMA.

Upon review of the testimony above, this court credits the testimony of John McCann and Martin Berdit, and finds that the IRS's knowledge exceeded the minimum level required by *Franklin*, and was within the range outlined by the Court of Appeals in *American Employers*. In doing so this court finds that, for the purposes of Md.Code § 9–401(2), the IRS had knowledge in that it was clearly on notice of Security Finance's interest in the CMA/Centex litigation and contract.

It is also clear to this court that after the August meeting with Berdit and McCann, the IRS was on notice of plaintiff's interest in the lawsuit and could have easily learned more about it if Walling had been diligent in following up on the conference she had with McCann and Berdit. All she had to do was to contact attorney Pelland. Pelland would have informed agent Walling of the security arrangement, as he did when Walling eventually contacted him.

Here we have a case where Security Finance, without benefit of counsel, acted with the utmost good faith in attempting to perfect its interest in the CMA/Centex contract. Plaintiff, upon providing CMA with a loan, obtained an "assignment and security agreement" and "promissory note" from CMA. Plaintiff tried to "lock in" its interest by filing a finance statement in the office of the Maryland State Department of Assessments and Taxation. This was done more than fifteen months before the IRS filed its tax lien. Plaintiff's one mistake was that it failed to file a copy of the statement with the clerk of the Circuit Court of Montgomery County. By reason of this one innocent misstep, the IRS wants to extract a windfall by collecting on its tax

---

**3.** Pelland entered into an agreement with Security Finance in May of 1985, that, after payment of costs and attorney's fees, Security would be

first in line to be paid from any recovery from the CMA/Centex litigation. Pelland Supplemental Affidavit, January 10, 1989.

lien which was filed some fifteen months after plaintiff had filed its finance statement in Baltimore.

The purpose of giving the private creditor priority under the federal tax code is to avoid penalizing innocent creditors with no knowledge of a debtor's tax liability. *See United States v. Delaware Trust Co.,* 167 F.Supp. 465 (D.C.Del.1958). Although federal law declares that the IRS interest arises from the moment taxes become due, private creditors do not lose priority to the tax debt until a tax lien has been filed. Those creditors who have perfected their interest before the filing of the notice of tax lien are protected, since they could have no such knowledge of the debtor's tax liability. Once a notice of tax lien has been filed, a private creditor having knowledge of the tax lien can make an informed choice as to whether to enter into a secured transaction with the taxpayer. If the creditor does so, his interest is subordinated to the IRS claim for the debtor's unpaid taxes.

In the instant case Security Finance could not possibly have known of CMA's tax liability when it entered into the loan transaction with CMA, since a notice of tax lien had not yet been filed. It is in just such a situation that private creditors are given priority under the IRS code, and it is clear that the court's findings in this case properly follow both the spirit and the letter of the law.

Moreover, to permit the IRS to prevail by virtue of its lack of diligence would do violence to the underlying spirit of the U.C.C.'s notice provisions. The intent of U.C.C. § 9–401 is to assure a junior creditor who enters into a secured transaction with a debtor that the security it obtains from a debtor is not unduly encumbered. In that case the senior creditor should not prevail if it has failed to perfect its interest under U.C.C. § 9–401.

That is not the situation before this court. The IRS did not extend credit to the taxpayer in reliance on the absence of plaintiff's financing statement in the records of circuit court of Montgomery County. Instead, the IRS seeks to oust Security Finance's priority interest simply because plaintiff did not make one of the two requisite filings. The court finds this result contradictory to both the spirit and the letter of the U.C.C., particularly where facts show that the IRS had been orally informed of plaintiff's interest and where the IRS could have easily learned more of plaintiff's interest by an examination of State finance records in Baltimore or by a simple phone call to the debtor's attorney. It is obvious that if the IRS had not ignored the information it received or had been diligent in any respect, it could have obtained access to the filing and learned first hand of the priority of Security Finance's interest. It should not receive a windfall from ignoring obvious facts or its lack of diligence.

Accordingly, based on the entire record in this case, I find that plaintiff had perfected its security interest under Maryland law prior to the filing of a notice of tax lien by the IRS, and is therefore entitled to the proceeds of the CMA/Centex litigation.

An appropriate order accompanies this opinion.

## ORDER

Upon consideration of plaintiff's motion for declaratory judgment or summary judgment, the defendant United States' cross-motion for summary judgment and the entire record in this case, and in accordance with the opinion issued on this date, it is

ORDERED that plaintiff's motion for summary judgment be and hereby is granted; it is

ORDERED that the defendant's cross-motion for summary judgment be and is hereby denied; and it is further

ORDERED that attorney Frank Pelland disburse all the proceeds, plus interest, from the escrow account containing the settlement of the CMA/Centex litigation to the plaintiff within twenty days of the entry of this order.