In the Matter of INDUSTRIAL COMMISSIONER OF THE STATE OF NEW YORK, Respondent, v SOUTH SHORE AMUSEMENTS, INC., Respondent. NATIONAL BANK OF NORTH AMERICA, Appellant.

First Department, December 21, 1976

*Edward N. Meyer* of counsel *(Robert D. Lang* with him on the brief; *Cole & Deitz,* attorneys), for appellant.

*Ronald Friedman* of counsel *(Samuel A. Hirshowitz* and *Murray Sylvester* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for Industrial Commissioner, respondent.

CAPOZZOLI, J. Petitioner, the Industrial Commissioner of the State of New York, is charged with the collection of unemployment insurance taxes. In this proceeding, brought pursuant to the provisions of CPLR 5227, it is seeking to reach funds of a

defaulting unemployment insurance taxpayer-employer which were on deposit with appellant bank.

Subdivision 2 of section 573 of the Labor Law provides for the issuance of a warrant against a defaulting employer, either to the sheriff or to an employee of the Department of Labor, such as a tax compliance agent, as in this matter. The statute further provides that, when such warrant is returned unsatisfied it can be treated as a judgment for the purposes of enforcement proceedings and this is what occurred here.

Petitioner issued warrants against the judgment debtor for unemployment insurance taxes in November, 1974 and August, 1975, in the amounts of $1,784.01 and $945.18 respectively. These warrants were thereafter filed with the County Clerk of Suffolk County and, on September 29, 1975 a tax compliance agent's levy was served on appellant. At that time the judgment debtor's account contained $1,450.

On September 3, 1974 appellant bank had loaned the judgment debtor herein $14,000. In February, 1975, after the judgment debtor defaulted on its loan, its account was referred to an officer of the bank for collection purposes. That officer did nothing until after the bank had been served with a tax compliance agent's levy, "at which time, I decided to offset * * * the funds on deposit".

On October 9, 1975, after the levy, the appellant sent to the tax compliance agent a letter indicating that the balance in the judgment debtor's account had been applied to reduce the delinquent indebtedness which debt, during the intervening time, the bank had twice renewed without payment of any principal. That letter of October 9 stated that the judgment debtor's account was "now closed." On November 26, 1975 the appellant answered a question contained in an information subpoena by stating that the account was "closed 11-19-75". In any event, it is abundantly clear from the record that, even though the bank had ample opportunity after the judgment debtor's default on its obligation to it, it did nothing in the way of setoff until after the levy herein.

Had the bank acted prior to the levy there would be nothing for this court to resolve, as the funds in the judgment debtor's account up until that time belonged to the judgment debtor— but this ended with the levy.

Involved herein are the provisions of section 151 of the Debtor and Creditor Law and CPLR 5232 (subd [a]). We deem these sections compatible. While section 151 of the Debtor and

Creditor Law did confer on appellant a right to set off against its outstanding loan to the judgment debtor the funds in the latter's account, such right must be viewed within the context of CPLR 5232 (subd [a]). That section provides, in pertinent part, as follows: "The person served with the execution shall *forthwith transfer* all such property, and pay all such debts upon maturity, to the sheriff and execute any document necessary to effect the transfer or payment * * * Until such transfer or payment is made, or until the expiration of ninety days after the service of the execution upon him, or of such further time as is provided by any order of the court served upon him, whichever event first occurs, the *garnishee is forbidden to make or suffer* any sale, assignment or transfer of, *or any interference with,* any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court." (Emphasis added.)

The appellant's right of setoff terminated with the levy. There is nothing in section 151 which requires the nullification of such levy. While that section does provide for a right of setoff, "notwithstanding the fact that such right of setoff shall not have been exercised by such debtor prior to the * * * issuance of execution", it does *not* provide for such right after levy. Once there is a levy, the funds of the judgment debtor which are on deposit with appellant, no longer belong to it and it follows that such funds could not be the subject of a setoff arising out of a debt owed by the judgment debtor to the appellant. After the levy those funds belong to the Industrial Commissioner and are not subject to setoff because of a debt owed by the depositor. *(United States v Sterling Nat. Bank & Trust Co. of N. Y.,* 360 F Supp 917, affd in relevant part 494 F2d 919.)

In the cited case, the United States brought an action against a bank to recover a penalty for its failure to honor a tax levy made by the Internal Revenue Service upon a checking account of one of the bank's depositors (Smith). In February, 1970, the IRS made an income tax assessment and demand for payment against Smith. In June, 1970, Smith borrowed money from the bank. In August, 1970 the IRS made a second assessment and demand for back taxes due, and in June, 1971 it served the bank with a notice of levy informing it of Smith's indebtedness to the United States and directed the bank to remit to the IRS all of Smith's property

which it held. Prior to the service of the levy, the bank had not restricted Smith's right to draw on his checking account and, unlike the case at bar, Smith had not fallen behind in his installment payments on the loan. The bank did not remit the funds as requested, and, after being served with a final demand by the IRS, it exercised a purported right of setoff, deducting from Smith's checking account, the amount outstanding on its loan to him. The Government sued to recover the amount so set off and deducted from Smith's account—and it was successful. The District Court held that the bank's reliance on section 151 of the Debtor and Creditor Law "is misplaced" (360 F Supp 917, 925, *supra).* In affirming the District Court's determination holding that the bank had a duty to comply with the levy, the Circuit Court of Appeals held (494 F2d 919, 921-922, *supra)* as follows:

"The question of whether the bank held property or a right to property of Smith is one of state law, in this case New York's. Aquilino v. United States, 363 U.S. 509, 80 S. Ct. 1277, 4 L. Ed. 2d 1365 (1960). It is maintained that the bank had no property of Smith other than the $1,352.72 turned over since the bank had a right to set off against the checking account any unpaid balance on the loan. Therefore, it is argued, at any one moment only the balance of the checking account funds over any unpaid obligations is property of the taxpayer held by the bank. In support of this proposition § 151 of the New York Debtor and Creditor Law, McKinney's Consol. Laws, c. 12, is cited * * *

"We are not convinced by this argument. The cases cited deal only with the right of setoff, and not with whether the full amount in the account is 'property' of the bank's customer. The literal language of § 151 quoted above would indicate that the full amount in the account is the customer's property. Under any realistic definition of 'property' the full amount in Smith's account was his property or his right to property. Until the bank acted to restrict his right to draw on the funds, Smith was entitled to write checks up to the full amount in the account. Clearly then all the funds in Smith's checking account were his property at the time that the IRS served the bank with notice of levy".

Accordingly, the judgment of the Supreme Court, New York County, entered on March 29, 1976 granting petitioner's application for a turnover of funds should be affirmed, with costs.

LANE, J. (dissenting). South Shore Amusements, Inc. main-

tained a bank account with the National Bank of North America (Bank). In addition, in September, 1974, South Shore had taken out a loan in the principal amount of $14,000 from the Bank and was delinquent in repayment. The Industrial Commissioner of the State of New York (Commissioner) had also filed two warrants against South Shore for taxes due under the New York State Unemployment Insurance Law in the office of the Clerk of Suffolk County on June 16 and August 21, 1975. The filing of these warrants with the clerk resulted in their becoming judgments and collectible as such.

On September 29, 1975, the Commissioner served a tax compliance agent's levy pursuant to CPLR 5232 (subd [a]) upon the Bank, based on his information that South Shore had about $1,450 on deposit with the Bank.

On October 9, 1975, the Commissioner demanded payment from the Bank, to which the Bank, in a letter of even date, responded that the balance in that account had been applied to reduce the indebtedness outstanding from South Shore to the Bank. The Commissioner then proceeded at Special Term for an order directing the Bank to release these funds to him as a judgment creditor (CPLR 5225, subd [b]; 5227). Special Term granted the petition. I would reverse.

The Bank account, which South Shore had, established it as the creditor of the Bank to the extent of the moneys deposited by it in the account (*Brigham v McCabe,* 20 NY2d 525, 530-531).

Section 151 of the Debtor and Creditor Law provides in pertinent part that: "Every debtor [in this case, the Bank] shall have the right upon * * * the issuance of any execution against any of the property of * * * a creditor [in this case, South Shore], to set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of any of the above mentioned events, and the aforesaid right of setoff may be exercised by such debtor against such creditor * * * notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to the making, filing or issuance, or service upon such debtor of, or of notice of * * * issuance of execution".

The language of the statute clearly allows for a setoff by the debtor Bank any time after issuance of execution, which would also include any time after service of the levy pursuant

to CPLR 5232 (subd [a]). To hold otherwise would be to nullify the benefit of section 151, since the first effective notice of the issuance of an execution is by service of that execution upon the garnishee (CPLR 5232, subd [a]).

In the case at bar, the filing of the warrants became the equivalent of entry of judgment against South Shore. The Commissioner then served a levy upon the Bank, which was the first opportunity the Bank had to exercise its options under section 151. The affirmance by this court of the granting of a judgment in favor of the Commissioner has operated, in my opinion, to nullify section 151.

Accordingly, the judgment of the Supreme Court, New York County, entered March 29, 1976 granting judgment in favor of the Commissioner, should be reversed on the law and the petition dismissed.

STEVENS, P. J., MARKEWICH and KUPFERMAN, JJ., concur with CAPOZZOLI, J.; LANE, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on March 29, 1976, affirmed. Petitioner-respondent shall recover of respondent-appellant $60 costs and disbursements of this appeal.