OPINION OF THE COURT
Arthur C. Aulisi, J.
This is a proceeding upon petition by Central National Bank, Canajoharie to vacate an execution levy made by the Sheriff of Montgomery County on behalf of the respondent, Cibro Petroleum Products, Inc. (hereinafter called "Cibro”), *451 the judgment creditor in the above action, against property claimed to belong to Fowler Finishing Co., Inc. (hereinafter called "Fowler”), the judgment debtor in the action. In addition, petitioner seeks to vacate a restraining notice served by Cibro upon the petitioner shortly before the levy was made.
Following the commencement of this proceeding, Cibro served an affirmation in opposition to the petition and also cross-moved for an order directing the petitioner to turn over to Cibro the sum of $22,011.87, with interest.
Cibro obtained its judgment against Fowler on or about April 27, 1977, for a sum in excess of the amount here in dispute. On May 6, 1977, Cibro served a restraining notice upon petitioner and the levy was made by the Sheriff on June 2, 1977, the execution with notice to garnishee identifying the property as "bank accounts” of Fowler held by petitioner.
Although Fowler had suspended its business operations on or about January 17, 1977, there were four bank accounts in the name of Fowler at the petitioner’s bank at the time the restraining notice was served. The accounts and the amounts on deposit in each were: (1) general account-$165.09; (2) payroll account-$385.30; (3) cash collateral account-$21,241.23; and (4) health and welfare account-$220.15. Following the service of the restraining notice and prior to the levy made by the Sheriff, petitioner, on May 9, 1977, deposited a check in the sum of $975.40 received from one of the Fowler accounts in the cash collateral account, increasing the amount on deposit in that account to $22,216.63. On the same day, the administrator of the Fowler health and welfare plan made a deposit of $2,355.55 in the health and welfare account, increasing the amount on deposit in that account to $2,575.70. At the time the levy was made, the total sum in all accounts was $25,342.72.
The cash collateral account was opened by Fowler at the petitioner’s bank in November, 1975, pursuant to the terms of an accounts receivable financing agreement made in connection with a loan of $380,000 by the petitioner to Fowler. The loan was evidenced by a note dated October 15, 1975 and the security interest of the petitioner was perfected by due filing of a financing statement with the Clerk of the County of Montgomery, the county in which Fowler’s business was located, on October 16, 1975, and with the New York Department of State, on October 20, 1975, pursuant to the Uniform Commercial Code. The financing statements covered both *452 accounts receivable and inventory and proceeds thereof. Under the accounts receivable financing agreement, Fowler was to assign its accounts receivable to the petitioner as security for the indebtedness. As each assigned account was paid, the sum paid was to be deposited in the cash collateral account and was not subject to withdrawal by Fowler. Under the agreement, the funds in that account were "subject to withdrawal by the Lender alone” and were to "be held by the Lender as security for the payment of any and all Liabilities” of Fowler. If Fowler was not in default, funds from the cash collateral account could be released to Fowler under certain conditions, upon request in writing, and subject to the maintenance of minimum requirements of security as provided in the agreement. Fowler defaulted on the indebtedness on December 15, 1976 and at the time the restraining notice was served upon the petitioner on May 6, 1977, was indebted to the petitioner in the sum of $266,881.80.
When petitioner’s security interest was perfected by proper filing in October, 1975 (Uniform Commercial Code, § 9-302), it thereupon took priority over all unfiled and unperfected interests (Uniform Commercial Code, § 9-301). Since liens of judgment creditors are perfected only by the issuance of an execution pursuant to CPLR 5202 (subd [a]), the lien of Cibro, as a judgment creditor of Fowler, was subsequent and subordinate to the lien of the petitioner on the cash collateral account funds. On default by Fowler, petitioner was entitled to apply the funds in the cash collateral account to Fowler’s indebtedness. Under the agreement, Fowler retained only a contingent right in the funds on deposit in that account which accrued upon the payment by Fowler to petitioner of all liabilities. Since Fowler defaulted and the funds in the account were far less than its indebtedness to the petitioner, there was no interest of Fowler to which the lien of Cibro could attach.
With respect to the funds on deposit in the general and payroll accounts of Fowler, the court concludes that the petitioner is entitled to all of the funds on deposit in both accounts under petitioner’s right of setoff pursuant to section 151 of the Debtor and Creditor Law. The court is not unmindful of the decision in Industrial Comm. of State of N. Y. v South Shore Amusements (55 AD2d 141), but finds the reasoning of the dissent more persuasive. To hold that the petitioner lost its right of setoff when the execution was issued would be *453 to ignore the legislative history surrounding the amendment of the statute and render the language of the statute meaningless and of no effect (1952 Report of NY Law Rev Comm, p 365; see, also, 51 St. John’s L Rev 651). The same principle would, of course, apply to the funds in the cash collateral account if the security interest of the petitioner had not been perfected.
Finally, as to the funds on deposit in the health and welfare account, it is clear that the moneys in that account belonged to the employees of Fowler and were not subject to levy by Cibro. The proof submitted showed that the fund consisted of contributions withheld from the earnings of Fowler’s employees, as well as contributions by Fowler; that the fund could only be disbursed by the administrator of the health and welfare plan, who was an independent third party; that Fowler had failed to make the contributions required of it for some period of time; and that the bulk of the fund, the May 9 deposit of $2,355.55 represented a contribution to the fund made by Fulmont Development Facility, Inc., an agency interested in the economic development of the community, after an urgent plea by the administrator for funds to meet the pending claims of Fowler’s employees.
For the reasons above set forth, the levy made by the Sheriff upon the four accounts referred to herein, and the prior restraining order served upon the petitioner, should be vacated.
The application of the petitioner is, therefore, granted in all respects, and the cross motion of the respondent Cibro for a turnover order is hereby denied.