**DICK WARNER CARGO HANDLING CORPORATION**

v.

**AETNA BUSINESS CREDIT, INC.**

**Civ. No. H–80–500.**

United States District Court, D. Connecticut.

May 12, 1982.

George E. Tillinghast, Mark K. Branse, Glastonbury, Conn., for plaintiff.

Brian W. Poirier, David Brown, Brown & Miller, Meriden, Conn., for defendant.

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, Senior District Judge.

This case requires the court to resolve plaintiff's and defendant's competing claims to a sum of money held by defendant. The principal actors in this case are the plaintiff, Dick Warner Cargo Handling Corporation (hereinafter Dick Warner or plaintiff), incorporated under the laws of Virginia; the defendant, Aetna Business Credit, Inc. (hereinafter Aetna or defendant), incorporated under the laws of New York and doing business in Connecticut; and Best Banana Company, Inc. (hereinafter Best Banana or debtor), incorporated

under the laws of New York. This case is in this court after being removed by the defendant from state court pursuant to 28 U.S.C. § 1441(a), the parties' citizenship being diverse.

### Facts

■ On April 10, 1979, Aetna and Best Banana entered into a security agreement, and the parties in this action have not disputed that four documents constitute this agreement: a General Loan and Security Agreement, an Accounts Receivable Rider to the General Loan and Security Agreement, a Rider to the General Loan and Security Agreement, and a Continuing Letter of Credit Agreement. Under the security agreement, Aetna agreed, *inter alia*, that it might, in its sole discretion, lend money to Best Banana and/or obtain letter(s) of credit for Best Banana to enable Best Banana to purchase bananas overseas. In return, Best Banana granted Aetna a security interest in certain of its assets, including its accounts receivable, which were designated as "Collateral." Financing statements[1] were executed and filed in accordance with New York law,[2] New York UCC §§ 9–103(3), 9–401(1)(c), with the New York Secretary of State on April 13, 1979, and with the Erie County, New York, Clerk on April 17, 1979.

To induce Aetna to lend money to Best Banana, James Poulos and Ted Benatovich, who appear to be corporate officers of Best Banana, executed Continuing Guaranty Agreements on April 10, 1979, personally guaranteeing to Aetna that all of Best Banana's obligations to Aetna would be satisfied. Additionally, in a letter to Aetna dated April 23, 1979, Peter Gilbert pledged a sum of money to be used to repay Aetna in the event Best Banana did not satisfy its obligations to Aetna.

Pursuant to the security agreement between Aetna and Best Banana, Aetna made advances to Best Banana and also received accounts receivable of Best Banana to secure the advances. Also pursuant to the security agreement, Aetna applied to Nordic American Bank (hereinafter Nordic) on behalf of Best Banana for issuance of an irrevocable letter of credit in the amount of $1,104,000 in favor of Exportadora Constructora Regional Ltda. (hereinafter Exportadora), a foreign seller of bananas. The letter of credit was issued by Nordic. Exportadora then sold two shipments of bananas to Best Banana and the bananas were shipped to Virginia. Dick Warner unloaded the bananas in Virginia under agreement with Best Banana. When Dick Warner sought payment for its services, Best Banana apparently did not pay. Dick Warner subsequently sued Best Banana in Virginia state court and was awarded judgment in the amount of $80,651.86 in November 1979.

Dick Warner then commenced suit in Hartford, Connecticut, Superior Court to collect the judgment through garnishment of assets of Best Banana in the control and possession of Aetna.[3] The garnishment was

---

1. The court notes that the description of the collateral which is required to be part of the financing statement under New York law, New York UCC § 9–402(1), is not attached to the copies of the financing statements submitted to the court. Because the parties have not made an issue about the sufficiency of the description, the court assumes that the descriptions are adequate and properly filed.

2. Under the Uniform Commercial Code as adopted in New York and Connecticut, New York law governs the method of creation and perfection of the security interest in the collateral in this case. New York UCC § 9–103(3); Conn.Gen.Stat.Ann. § 42a–9–103(3).

   The parties have not disputed the law to be applied in this case; in fact, the parties barely mention it. Defendant asserts in its brief that New York law is applicable. To be sure, because the security agreement and guaranty agreements are between New York citizens and the documents state that New York law shall control, New York law will be applied in construing these documents and determining the legal rights and responsibilities arising from them. But because the garnishment occurred in Connecticut, the Connecticut law of garnishment will be applied in resolving this dispute. The resolution of this case is not dependent on applying the law of one state rather than another.

3. Aetna claims it holds $45,789.11 of Best Banana's accounts receivable. Aetna calculated this figure by subtracting the sum of advances

made upon Aetna at the time of service of process on Best Banana on January 11, 1980. Best Banana then sought to dissolve the garnishment and dismiss the action, but the garnishment was upheld by Connecticut Superior Court Judge Wright on April 28, 1980. Judgment was thereafter rendered by the Connecticut Superior Court against Best Banana as defendant and Aetna as garnishee. Dick Warner then made demand upon Aetna for satisfaction and Aetna refused. Dick Warner then instituted this scire facias action in Connecticut Superior Court. The case was thereafter removed to this court pursuant to 28 U.S.C. § 1441(a) and is now before this court on parties' cross-motions for summary judgment.

Before proceeding to the merits of the case it should be pointed out that Exportadora has filed suit in New York Supreme Court against Nordic, Aetna, and Best Banana alleging, *inter alia*, that the letter of credit was wrongfully dishonored. Each of the defendants in that action apparently has appeared and the matter is pending in the New York court.

### Merits of the Parties' Claims

In this case, the court must determine whether Aetna or Dick Warner has superior rights to the sum held by Aetna and allegedly owed to Best Banana. The parties have urged the court to adopt various interpretations of section 9–301(4)[4] of the Uniform Commercial Code to dispose of the matter. The court finds it unnecessary to employ the cited statute to decide this case;[5] rather, the terms of the security agreement entered into by Best Banana and Aetna can be construed to resolve the instant dispute between Aetna and Dick Warner. As the United States Court of Appeals for the Second Circuit has recently stated:

> Section 9–201 of the [New York Uniform Commercial Code] provides: "Except as otherwise provided by this Act a security interest is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." This section has been called the "golden rule of Article Nine," J. White and R. Summers, *Handbook on the Law Under the Uniform Commercial Code* § 25–12 at 938 (1972), and is fundamental to the treatment of security interests under the Code. In the words of one commentator, "What this [section] means is that the security agreement is the controlling document. It controls the rights and obliga-

---

made to Best Banana under the security agreement, of interest due from Best Banana under the security agreement, and of other charges made under the security agreement from the total amount of Best Banana's accounts receivable which Aetna had possession of under the security agreement. Dick Warner disputes this amount, claiming the figure should be higher. Because of the ultimate disposition of the case, it is unnecessary to resolve this dispute. For convenience, $45,789.11 will be used to designate the sum in controversy.

4. Section 9–301(4) of the Uniform Commercial Code reads:
   A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures advances made before he becomes a lien creditor or within forty-five days thereafter or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien.

5. In fact, the court is not certain that section 9–301(4) of the Uniform Commercial Code is applicable to the case at bar. This section was added to the Code as part of the 1972 amendments to resolve uncertainties about priority "between one who makes subsequent advances and a lien creditor who intervenes between the time of agreement and the time of the subsequent advance." J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 25–2 (2d ed. 1980). It is not clear to the court that the amounts defendant is claiming as advances—the attorney's fees, the interest charges, etc.—would qualify as advances because they may not be "'of the same quality as the primary obligation,'" *Security National Bank & Trust Co. v. Dentsply Professional Plan*, 617 P.2d 1340 (Okl.1980) (citations omitted), the primary obligation in this case being money lent to finance the purchase of bananas. On the other hand, amounts for which Aetna might be liable under the letter of credit which allowed Best Banana to purchase the bananas, an event contemplated under the security agreement, might qualify as an advance under section 9–301(4). In any event, the security agreement can be construed to decide this case.

tions between lender and borrower. It also binds third parties (e.g., 'purchasers of the collateral and . . . creditors')." T. Quinn, *Uniform Commercial Code Commentary and Law Digest* § 9–201[A] at 9–84 (1978).

*Allegaert v. Chemical Bank*, 657 F.2d 495, 508 (2d Cir. 1980).

### 1. *Aetna's Rights Under the Security Agreement*

In this case, Aetna has admitted that on the date of garnishment no debt was owed by Best Banana to it; in other words, Aetna apparently was oversecured in the amount of $45,789.11.[6] However, the security agreement between Aetna and Best Banana provided that:

> all other sums for which [Best Banana] may become liable hereunder and all costs and expenses (including also attorney's fees and court costs) which Aetna may incur in enforcing or protecting its lien on or rights and interest in the Collateral or any of its rights or remedies under this or any other agreement between the parties hereto or in respect of any of the transactions to be had thereunder, until paid by [Best Banana] to Aetna with interest at the rate aforesaid, shall be so much additional indebtedness owing by [Best Banana] to Aetna hereunder and secured by all the said Collateral . . . and by any and all other Collateral, security, assets, reserves or funds of [Best Banana] in or coming into the hands of Aetna.

Under this provision, Aetna has authority to retain the collateral as security for an expense incurred of the kind enumerated in the security agreement.

■ Expenses, such as the attorney's fees and costs incurred in litigation undertaken to protect Aetna's rights under the security agreement, are appropriate obligations to be secured by the collateral through contractual agreement. The Court of Appeals for the Second Circuit recently had occasion to decide whether creditors' claims for collection costs, including attorney's fees, alleged to have arisen under loan agreements with a debtor, were recoverable in a bankruptcy proceeding under Chapter XI. *United Merchants and Manufacturers, Inc. v. The Equitable Life Assurance Society (In Re United Merchants and Manufacturers, Inc.)*, 674 F.2d 134 (2d Cir. 1982). In reversing the district court's decision disallowing the claim, the court stated, "allowing a claim under a collection costs provision merely effectuates the bargained-for terms of the loan agreement." *Id.*, 674 F.2d at 137. Thus, the court preferred the creditors' contractual claims for the "expenses incurred in protecting their interests in [the debtor's] assets," *id.*, 674 F.2d at 137, to the debtor's claim in those assets. Although this Second Circuit case stemmed from a bankruptcy proceeding and involved unsecured creditors rather than a secured creditor such as Aetna in this case, the principles regarding the effect of the contractual provisions between a creditor and debtor are applicable to the present controversy. Thus, the court must give effect to Aetna's claim, based on the security agreement between Aetna and Best Banana, to the collateral as security for attorney's fees and other expenses incurred in protecting its collateral and litigating claims related to the underlying transactions.

### 2. *Best Banana's Interest in the Collateral*

■ The court having recognized Aetna's contractual claim to the collateral, Best Banana can be said to have only a contingent right to the collateral. *See generally Cibro Petroleum Prods., Inc. v. Fowler Finishing Co.*, 92 Misc.2d 450, 400 N.Y.S.2d 322 (Sup. Ct. Albany County 1977). Best Banana's right to the collateral is dependent upon Aetna incurring no expense of the sort mentioned in the security agreement. Because Aetna has incurred such expense in this litigation and the pending New York case, and is likely to incur additional expense, Aetna is justified in holding the collateral and cannot be said to be indebted to Best Banana at this time. In the absence of debt owing to Best Banana from Aetna,

---

**6.** *See* note 3 *supra.*

summary judgment must be granted in favor of defendant.

Plaintiff argues that *Parsons v. Root*, 41 Conn. 161 (1874), requires a different result. In *Parsons*, garnishee owed debtor $169.88 for work the latter had performed. Payment was not made, but another contract was entered into whereby garnishee was to perform work for debtor in exchange for $330. While this contract was being performed by garnishee, debtor became insolvent and plaintiff, a creditor of the debtor, "factorized" the $169.88 garnishee owed debtor under the first contract. Garnishee refused to pay plaintiff and, having completed the work under the second contract without being paid, claimed not to be indebted to debtor because the $330 debtor owed garnishee offset the $169.88 garnishee owed debtor. Plaintiff sued garnishee to recover the $169.88. The Supreme Court of Connecticut held that on the date of garnishment garnishee had no claim on the second contract with debtor that could have been set off in a suit by debtor against garnishee because nothing was due on that date. Thus, plaintiff was able to collect the $169.88 from garnishee.

Similarly, argues plaintiff in this case, on the date of garnishment, Aetna, the garnishee, had no claims against Best Banana, the debtor, that could be used to diminish the collateral that was being held by Aetna on behalf of Best Banana. Best Banana's debts that Aetna is claiming diminish the collateral, argues plaintiff, arose after the date of garnishment and therefore, as in *Parsons*, cannot be used to offset the amount of collateral held by Aetna on the date of garnishment. This argument and interpretation of *Parsons* fails to account for the fact that in the present case the security agreement, the "controlling document" that binds even third parties, provides that Aetna could hold the collateral to secure just the type of expenses that Aetna has incurred and may incur in the future. This fact renders the rule of *Parsons* inapplicable to the matter now in controversy.

■ Plaintiff also advances several arguments which stem from the basic premise that Aetna should pay the garnishment because the various guaranty agreements ensure that Aetna will be held harmless. This argument fails to consider the nature of the guaranties and the legal rights and responsibilities which flow from them. It is well recognized that guaranties can be either general or special. "A guaranty is special when it is addressed to a particular person, firm or corporation, and, when so addressed, only the promisee named in the instrument acquires any rights in it." A. Stearns, *Law of Suretyship* § 4.4 (5th ed. 1951). *See also Evansville Nat'l Bank v. Kaufmann*, 93 N.Y. 273, 276, 277 (1883); Anno., 41 A.L. R.2d 1213 § 5(c) (1955). The guaranty agreements in this case are made in favor of only Aetna and therefore qualify as special guaranties. The rules stated above make plain that under such circumstances, Dick Warner has no basis to invoke the guaranty agreements as grounds to recover in this action.

■ The public policy considerations offered by plaintiff in support of its position need not be discussed at length. It is sufficient to say that the public policy, as determined by the legislature and evidenced by the enactment of section 9–201 of the Uniform Commercial Code, envisions the security agreement as the "controlling document." Thus, the provisions of the security agreement in this case have been construed to reach the court's conclusion.

Summary judgment in favor of plaintiff is denied and in favor of defendant is granted.

SO ORDERED.