**DICK WARNER CARGO HANDLING CORP., Plaintiff-Appellant,**

v.

**AETNA BUSINESS CREDIT, INC., Defendant-Appellee.**

**No. 316, Docket 82–7481.**

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1982.
Decided Feb. 14, 1983.

George E. Tillinghast, Jr., Glastonbury, Conn., for plaintiff-appellant.

Bonnie J. Schachter, Meriden, Conn. (David Brown, Meriden, Conn., on the brief), for defendant-appellee.

Before WATERMAN, KAUFMAN and NEWMAN, Circuit Judges.

NEWMAN, Circuit Judge:

This diversity case presents questions concerning Connecticut's law of garnishment, see Conn.Gen.Stat.Ann. § 52–381 (West 1960), and the future advance clause of the Uniform Commercial Code, see N.Y. U.C.C. § 9–301(4) (McKinney Supp.1982). In this case, a judgment creditor from Virginia attempted to garnish an account held as collateral in Connecticut under a security agreement governed by New York law. The District Court (M. Joseph Blumenfeld, Judge) ruled, 538 F.Supp. 1049, that the garnishment was invalid under Connecticut law. We reverse because we conclude that Connecticut law is to be interpreted to permit the garnishment in order to effectuate the future advance clause of the Uniform Commercial Code. Whether the garnishor is now or will ever be entitled to collect its claim from the garnished account, however, must await further proceedings on remand and perhaps future events.

## I.

Best Banana Co. Inc. is a banana importer. To finance purchases from Ecuador, Best Banana entered into a General Loan and Security Agreement, including several supplementary riders, with appellee Aetna Business Credit, Inc. ("Aetna") on April 10, 1979. Under the Agreement, Aetna promised to lend money to Best Banana and to obtain letters of credit that would enable Best Banana to purchase produce from a Latin American supplier. To cover its obligations under the Agreement, Best Banana granted Aetna security interests in many of the company's assets, including then-owned and after-acquired inventory and accounts receivable and proceeds thereof. The Aet-

na-Best Banana Agreement called for Best Banana to forward all collections on its accounts receivable to an account maintained by Aetna. Under the Agreement, Aetna was authorized to use funds in this account to discharge specified obligations owed by Best Banana to Aetna. These obligations included principal and interest due on loans made under the Agreement, liabilities, losses, and expenses arising out of Aetna's application for letters of credit for Best Banana, and attorney's fees and expenses arising out of legal proceedings brought by or against Aetna because of its Agreement with Best Banana. Aetna's security interests were perfected in April 1979.

With its financing arranged, Best Banana began to import bananas. The company arranged for appellant Dick Warner Cargo Handling Corporation ("Warner") to unload two boatloads of bananas at Portsmouth, Virginia, in June and July 1979. Warner unloaded the cargo, but Best Banana failed to pay $80,651.86 of the amount it owed Warner for the work. Warner then brought suit against Best Banana in a Virginia state court. In November 1979, Warner was awarded judgment against Best Banana for the entire claim. After obtaining its Virginia judgment, Warner came to Connecticut seeking to collect its money from funds held by Aetna for the account of Best Banana.

Connecticut law permits the assertion of quasi-in-rem jurisdiction by process of garnishment, which is also known in Connecticut as foreign attachment. See Conn.Gen. Stat.Ann. § 52–329 (West Supp.1981). Under Connecticut's procedure the creditor institutes an action against its debtor by garnishing the debtor's funds in the hands of a third party. If the debtor challenges the garnishment, the state court in the creditor-debtor action tests the garnishment only to the extent of determining whether there is probable cause to sustain the validity of the creditor's claim. *William M. Raveis & Associates v. Kimball,* 186 Conn. 329, 441 A.2d 200, 203 (1982); Conn.Gen.Stat.Ann. § 52–278d(a) (West Supp.1981). If probable cause exists, the court then adjudicates the

creditor's claim against the debtor and, if the creditor prevails, enters judgment for the creditor. The creditor then makes demand upon the garnishee for payment of the funds subject to the garnishment. If the garnishee refuses payment, the creditor may then proceed by a scire facias action, see Conn.Gen.Stat.Ann. § 52–381 (West 1960), or a declaratory judgment action, see id. § 235a, to secure an adjudication that the garnishee holds assets of the debtor that are subject to garnishment. *See Clime v. Gregor,* 145 Conn. 74, 138 A.2d 794 (1958). If the creditor secures judgment in the scire facias or declaratory judgment action, it is then entitled to have execution upon the garnishee, up to the amount of the garnished funds, to satisfy the judgment obtained against the debtor. *See generally* 1 E. Stephenson, *Connecticut Civil Procedure* §§ 56–74 (2d ed. 1970).

On January 3, 1980, the Connecticut Superior Court granted Warner an ex parte, pre-judgment remedy that allowed Warner to garnish $90,000 of Best Banana assets in the possession of Aetna Business Credit. When Warner served process on Aetna on January 11, 1980, at which time Warner's garnishment took effect, there was $45,-789.11 in the account in which Aetna held the proceeds of Best Banana's accounts receivable. Up to that date, Aetna had received $399,366.02 into Best Banana's account and had used $353,576.91 of those receipts to discharge obligations incurred by Best Banana, as permitted by the Agreement. As of January 11, 1980, Best Banana had no outstanding obligations to Aetna.

Shortly after process was served, Best Banana moved in the Connecticut Superior Court to dissolve the garnishment. That motion was denied after the state court found probable cause to sustain Warner's claim against Best Banana. The state court then ruled on June 25, 1980, that in view of the Virginia judgment Warner was entitled to a Connecticut judgment for $80,651.86. After unsuccessfully demanding payment from Aetna, as garnishee, Warner brought this scire facias action against Aetna in the Connecticut Superior Court. Aetna re-

moved the action to the District Court on the basis of diversity jurisdiction. 28 U.S.C. § 1441 (1976).

■ Ruling on cross-motions for summary judgment, the District Court granted judgment in favor of Aetna. While the parties had assumed that the case would be decided under the "future advance" clause of the Uniform Commercial Code, N.Y.U.C.C. § 9–301(4) (McKinney Supp.1982), the District Court ruled that section 9–201 governed the case. *See id.* § 9–201 (McKinney 1964). Section 9–201 provides: "Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of collateral and against creditors." The District Court reasoned that the Agreement coupled with applicable Connecticut law protected Aetna against creditors like Warner. Under the Agreement, Aetna had the authority to hold the funds in Best Banana's account as security for liabilities incurred by Best Banana. Aetna was not obliged to return the funds until it was clear that no more obligations would arise under the Agreement. The District Court therefore concluded that Best Banana had only a contingent interest in its account with Aetna. Under Connecticut law, contingent interests cannot be garnished. *See Wilber v. New Haven Water Co.,* 37 Conn. Supp. 877, 880, 441 A.2d 863, 865 (1982); *accord Cibro Petroleum Products v. Fowler Co.,* 92 Misc.2d 450, 400 N.Y.S.2d 322 (Sup. Ct.1977). Believing that Warner's garnishment was invalid, the District Court ruled that Warner could not obtain payment from Aetna in a scire facias action. *See Burdett v. Roncari,* 181 Conn. 125, 434 A.2d 941 (1981).

The District Court had ample basis for predicting that Best Banana would incur additional obligations to Aetna under the Agreement. In October 1980, the Ecuadorian firm that had supplied Best Banana brought suit against Aetna, along with Best Banana and a bank, on the ground that the letter of credit for which Aetna had applied on Best Banana's behalf had been dishonored. Under the Agreement, Best Banana was bound to reimburse Aetna for attorneys' fees expended in the defense of the Ecuadorian suit. Moreover, should Aetna ultimately be found liable to the Ecuadorian firm under the letter of credit, Best Banana would have to compensate Aetna for that liability. Under the Agreement, Aetna could use the funds in Best Banana's account to cover either or both of these obligations. The District Court concluded that this contractual arrangement left Best Banana with only a contingent interest in the account. However, by focusing on the contingency of Best Banana's claim, the District Court resolved the dispute between Warner and Aetna without reckoning with Uniform Commercial Code section 9–301(4), a provision added to the Code to determine the priority of future advances made by secured parties.

## II.

The problem raised by this appeal is reconciling section 9–301(4) of the Uniform Commercial Code with the District Court's admittedly plausible reading of Connecticut garnishment law. Section 9–301(4) provides, in relevant part, "A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures advances made ... pursuant to a commitment entered into without knowledge of the lien." [1] Elsewhere, the Code states, "An advance is made 'pursuant to commitment' if the secured party has bound himself to make it, whether or not a subsequent event of default or other event not within his control has relieved or may relieve him from his obligation." N.Y.U.C.C. § 9–105(1)(k) (McKinney Supp.1982).

1. Section 9–301(4) also allows a secured party to have priority over an intervening lien creditor for future advances made within 45 days after the lien attaches and future advances made without knowledge of the lien. Neither of these circumstances applies to this case.

Any additional obligations incurred by Best Banana to Aetna were incurred more than 45 days after January 11, 1980. In addition, Aetna had notice of Warner's lien on January 11, 1980, when the company was served with process.

According to the official comments to the Uniform Commercial Code, section 9–301(4) was added in the 1972 amendments to establish "the extent to which advances made under a perfected security interest after the rights of a lien creditor have attached to the collateral will come ahead of the position of the lien creditor." On the facts of this case, section 9–301(4) is supposed to determine the extent to which advances made by Aetna to Best Banana after January 11, 1980, have priority over the Best Banana account upon which Warner obtained a lien on January 11, 1980.

The District Court's interpretation of Connecticut garnishment law prevented the Court from applying section 9–301(4) to resolve the dispute between Warner and Aetna. The District Court determined that because Best Banana's interest in its account was contingent, Warner did not have a valid garnishment, which is to say that Warner was not a lien creditor for purposes of section 9–301(4).

■ This analysis unnecessarily restricts the scope of the garnishment statute at the expense of the future advance clause. The reason why Best Banana's interest in the collateral was deemed contingent was that Best Banana had given Aetna a security interest in the collateral based on a security agreement that included a future advance clause. Since garnishments seem to be the only legal mechanism available in Connecticut to unsecured creditors for reaching accounts like the one involved in this case, the unintended consequence of the District Court's ruling is to give secured parties like Aetna, with broadly written future advance clauses, complete protection against intervening creditors like Warner, even as to future advances for which section 9–301(4) does not accord them priority. Clearly, neither New York nor Connecticut law warrants such extensive priority for secured creditors with future advance clauses.[2]

■ Given the far-reaching ramifications of the District Court's decision, we are reluctant to accept it unless compelled by Connecticut's law of garnishment. Connecticut cases require that for a debt to be subject to garnishment, the debt must be due and not contingent. *See Wilber v. New Haven Water Co., supra.* However, under Connecticut law, a garnishable debt need not be one on which the debtor could successfully demand immediate payment. *Wilber* itself recognizes that garnishments can be made on funds "owing to a debtor at the date of garnishment, but payable in the future." 441 A.2d at 865. Furthermore, Connecticut holds that while a debt is not due if it does not arise until the occurrence of a condition precedent, *Chambers v. Blickle Ford Sales, Inc.,* 313 F.2d 252, 259 (2d Cir.1963); *Molloy v. Prudential Insurance Co.,* 129 Conn. 251, 27 A.2d 387 (1942), a debt is due and garnishable even though the debt may "be defeated by a condition subsequent." *Calechman v. Great Atlantic & Pacific Tea Co.,* 120 Conn. 265, 270, 180 A. 450, 452 (1935); *Goodman v. Meriden Britannia Co.,* 50 Conn. 139, 150 (1882). Thus, it is possible to say, as the District Court did, that the $45,789.11 in the Aetna account is not "due" to Best Banana until Aetna's security agreement claims have been shown to be satisfied. But it could as well be said that the positive balance in the Aetna account was "due" to Best Banana on January 11, 1980, subject to the condition subsequent that Aetna's claims—those for which section 9–301(4) entitles it to the benefit of its security interest—are satisfied out of the fund.[3]

■ Given these two plausible ways of considering the "dueness" of the debt, we conclude that the better view is that, when-

---

**2.** Like New York, Connecticut has adopted the future advance clause of the 1972 amendments to the Uniform Commercial Code. *See* Conn. Gen.Stat.Ann. § 42a–9–301(4) (West Supp. 1981).

**3.** As a respected commentator has noted, it is not easy to tell whether conditions are to be considered precedent or subsequent for purposes of rendering debts subject to attachment. *See* E. Stephenson, *supra,* § 66, at 262; *see, also Clime v. Gregor, supra* (suggesting that a verdict in favor of a principal debtor may be garnished even though the verdict may subsequently be set aside).

ever the conditions of a security agreement affect the "dueness" of collateral, those conditions should be considered conditions subsequent. Collateral that is subject only to obligations arising out of future advances covered by a security agreement would then be garnishable under Connecticut law. This approach need not affect the normal operation of Connecticut garnishment law as to any debts except those held as collateral under security agreements. Our limited accommodation for debts held as collateral is warranted to give effect to the clear purpose of section 9–301(4) of the Uniform Commercial Code.[4] In so construing Connecticut law, we are emboldened by a recent decision of that state's Supreme Court interpreting, in a somewhat analogous situation, the law of attachment to accommodate the needs of related state statutory schemes. *See England v. England,* 440 A.2d 790, 791–92 (Conn.1981); *see also Dorr-Oliver, Inc. v. Willett Associates,* 153 Conn. 588, 593, 219 A.2d 718, 721 (1966) ("garnishment statutes should be liberally construed"). We believe that if this case had not been removed from the state court, the Connecticut courts would have concluded that section 9–301(4) of the Uniform Commercial Code, which Connecticut has adopted, *see* Conn.Gen.Stat.Ann. § 42a–9–301(4) (West Supp.1981), presupposes a legal mechanism that can reach collateral held for future advances and would also have found such collateral garnishable under state law.

### III.

Although we rule that Warner made a valid garnishment on Best Banana's account with Aetna, it does not follow that

Warner's garnishment is now enforceable against Aetna in this scire facias action. Warner has simply achieved the status, effective January 11, 1981, of an intervening lien creditor. The priority of Warner's lien, as against Aetna's security interest for future advances, is determined by section 9–301(4).

Because the District Court rested its decision on the conclusion that Warner was not a lien creditor, it did not consider the application of section 9–301(4) to this case. Consequently, we have neither the factual record nor the guidance of a district court's opinion in the first instance necessary to resolve this dispute on appeal. Several important issues remain unexplored. To begin with, there is considerable disagreement over which of the obligations Best Banana has or may incur after January 11, 1980, as a result of its Agreement with Aetna, qualify as future advances made pursuant to a commitment under section 9–301(4) and section 9–105(1)(k). Other circuits have been unwilling to consider attorneys' fees of the sort that Aetna is expending in its own defense in the letter of credit suit as having priority under section 9–301(4). *See In re Apollo Travel, Inc.,* 567 F.2d 841 (8th Cir. 1977). *But cf. In re Continental Vending Machine Corp.,* 543 F.2d 986, 993–94 (2d Cir.1976) (attorneys' fees recoverable in bankruptcy proceeding when secured debt had not been repaid). Moreover, there is even some reason to doubt that, if Aetna is forced to make payments under a letter of credit to the Ecuadorian firm, such payments would count as a secured future advance with priority over Warner's lien under section 9–301(4).[5] Determining which,

4. Elsewhere, the Uniform Commercial Code explicitly limits the power of a secured party to contract around intervening lien creditors. Section 9–311 renders ineffective any provision of a security agreement that purports to prevent involuntary transfer of the debtor's interest in collateral by way of "attachment, levy, garnishment or other judicial process." *See* Conn.Gen.Stat.Ann. § 42a–9–311 (West 1960).

5. Arguably, section 9–301(4) covers only transactions in which the secured party advances new assets to the debtor and does not allow the

secured party to increase its secured interest by assuming liabilities of the debtor, even if bound to assume the liabilities by a prior commitment. The rationale of such a theory would be that the secured party does not injure unsecured creditors when the secured party advances an asset because the debtor's assets increase by the same amount that the security interest increases following the advance. However, when the secured party assumes an unsecured liability of the debtor, the debtor's assets remain the same after the advance, although those assets remaining unsecured and available

if any, of Best Banana's actual and potential obligations qualify as section 9–301(4) future advances raises difficult questions that may turn on the facts of the case. We do not resolve these issues, but instead remand the matter to the District Court for further consideration.

Upon remand, the District Court should consider whether the advances made by Aetna since January 11, 1980, and those it may make in the future pursuant to the security agreement qualify under section 9–301(4) as advances entitled to a priority over Warner's lien. It may not be necessary to adjudicate all the payments Aetna has made or may be called upon to make. It will be sufficient to adjudicate the status of payments only up to the amount of Warner's lien, $45,789.11. If the District Court determines that at least $45,789.11 of advances made by Aetna since January 11, 1980, are entitled to priority under section 9–301(4), then Best Banana's account will have been completely consumed by secured claims with priority over Warner's lien, and, in that event, the scire facias action should be dismissed with prejudice. See Cibro Petroleum Products, Inc. v. Fowler Finishing Co., supra. If the District Court determines that advances entitled to priority have not yet consumed the Best Banana account, but that Aetna may be called upon in the future to make at least $45,789.11 of advances entitled to priority, then the District Court should stay the execution of Warner's judgment against Best Banana for the time being, see Conn.Gen.Stat.Ann. § 52–386 (West 1960), and dismiss without prejudice Warner's scire facias action against Aetna. In that event the garnishment filed in connection with Warner's successful suit against Best Banana will simply remain as a lien: Aetna may vacate the garnishment if and when it becomes clear that advances entitled to a priority have been made that consume the account, or Warner may institute a new scire facias action if and when it becomes clear that funds remain in the account that could not be consumed by advances entitled to a priority.[6] Finally, if the District Court determines that none of the advances Aetna has made since January

---

to unsecured creditors decrease. We need not and do not now assess this or any alternative theory of section 9–301(4).

**6.** Connecticut's one-year statute of limitations for scire facias action, see Conn.Gen.Stat.Ann. § 52–586 (West 1960), should present no bar to a second action by Warner. The statute does not begin to run until the cause of action accrues, and the cause of action does not accrue until Warner makes a demand for payment on Aetna as garnishee. See Hayes v. Weisman, 97 Conn. 387, 116 A. 878 (1922). Under Connecticut law, a judgment creditor normally must make demand on a garnishee within sixty days after final judgment against the principal debtor. Conn.Gen.Stat.Ann. § 52–328 (West 1960); see Quinlan v. City National Bank of South Norwalk, 105 Conn. 424, 135 A. 435 (1926). In this case, Warner obtained final judgment against Best Banana on June 25, 1980. However, the Connecticut statute governing the execution of liens after judgment recognizes that a judgment creditor's lien cannot be executed immediately after judgment if that lien is subordinate to a senior encumbrance. When a senior encumbrance exists, the judgment creditor has sixty days to execute its levy and demand payment on the garnishee "after such encumbrance has been removed." Conn.Gen. Stat.Ann. § 52–328. This extension for execution is necessary because, until the senior encumbrance has been removed, it is not clear how much of the garnishee's debt to the principal debtor remains to be demanded by the judgment creditor. See Beers v. Place, 3 Fed. Cas. 71, 72–73 (D.Conn.1870) (No.1233), reprinted in 36 Conn. 578, 581–83 (1870). In this case, Warner will have sixty days to demand payment from Aetna once it has resolved the extent of Aetna's superior claim under section 9–301(4). If at that time Aetna refuses to make payment, Warner will have a year to bring another scire facias action.

In the future, judgment creditors like Warner might be better advised to take advantage of Connecticut's declaratory judgment provisions to determine the priorities governing garnished accounts subject to future advance clauses. See Conn.Gen.Stat.Ann. § 52–235a (West 1960). The declaratory judgment provision is less cumbersome than the scire facias action, and was enacted to provide judgment creditors like Warner a simple mechanism for determining their priority in relation to other encumbrances. See The Use of Declaratory Judgements [sic] When Scire Facie [sic] Proceedings Are Used: Hearings Before the Connecticut Joint Standing Committee on Judiciary and Governmental Functions pt. 3, at 936–37 (Mar. 9, 1959) (remarks of Harold Yudkin, New Haven Bar Ass'n).

11, 1980, and none that it may be called upon to make are or would be entitled to a priority, then Warner would be entitled to judgment in this scire facias action.[7]

The judgment is reversed and the cause remanded for further proceedings.

---

**7.** A variant of this last possibility might exist in the unlikely combination of events whereby (a) some of the advances already made are entitled to a priority and do not consume the entire account and (b) the District Court determines that none of the advances Aetna will be called upon to make would be entitled to a priority; Warner would then be entitled to payment on its lien out of whatever portion of the account has not been consumed by advances entitled to a priority.